**Bobby RICHARDS, Appellant,**

v.

**TREASURER OF the STATE of Missouri as Custodian of the Second Injury Fund, Respondent.**

**No. WD 65372.**

Missouri Court of Appeals, Western District.

Nov. 29, 2005.

---

Jerry Kenter, Sedalia, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Kristen E. Paulsmeyer, Asst. Atty. Gen., Jefferson City, MO, for respondent.

Before: SPINDEN, P.J., and HOWARD and HOLLIGER, JJ.

VICTOR C. HOWARD, Judge.

Bobby Richards ("Richards") appeals from a decision of the Labor and Industrial Relations Commission ("Commission") finding that the Treasurer of the State of Missouri, as Custodian of the Second Injury Fund ("Second Injury Fund"), is not liable for Richards' preexisting carpal tunnel syndrome. Richards argues two points on appeal. In Point I, Richards argues that the Commission erred in denying Second Injury Fund liability, because Richards' prior injuries constituted a hindrance or obstacle to employment and reemployment. In Point II, Richards argues that the Commission erred in denying Second Injury Fund liability because the total disability from all of the injuries he sustained exceeded the mere sum of the individual disabilities. For the following reasons, we affirm the judgment of the Commission.

## Background

In August 2001, Richards sustained a right shoulder injury while working at Sedalia Steel Company. Prior to the hearing, the parties stipulated that Richards sustained a 17.5% permanent partial disability of the right shoulder as a result of the August 2001 accident.

Richards testified at the Division of Workers' Compensation hearing about a previous injury that caused problems with his hands after he fell from a truck and landed on his hands while working in December 1998. After this injury, Richards said he experienced numbness and tingling in his hands. Richards also said that he had trouble sleeping and frequently dropped things. Richards sought treatment from Dr. Gunter on December 16, 1998, and January 13, 1999, for complaints of bilateral hand pain. The pain in Richards' right hand was worse than the pain in his left hand. During the first visit, Dr. Gunter gave Richards splints and prescribed Daypro (an anti-inflammatory drug). During the second visit, Dr. Gunter noted that Richards' condition improved with the use of splints, but symptoms continued without the splints. At the time of the second visit, Richards was scheduled to return in one month if symptoms persisted, but Richards never returned to Dr. Gunter.

Richards said the condition of his hands continued to worsen, but he did not seek any further medical treatment until after he hurt his shoulder in 2001. He eventually had surgery on his left hand in October 2003.

At the Division of Workers' Compensation hearing before an administrative law judge ("ALJ"), Richards introduced the deposition testimony of Dr. James Stuckmeyer, an orthopedic surgeon who said he examined Richards on January 14, 2003.

Dr. Stuckmeyer made what he called "classic findings" of bilateral carpal tunnel syndrome and said Richards should be evaluated with electromyograms (EMGs). In Dr. Stuckmeyer's opinion, Richards suffered a twenty percent permanent partial disability in each wrist. Dr. Stuckmeyer also testified that Richards probably had a rotator cuff tear in his right shoulder that resulted in a twenty-five percent permanent partial disability and a five percent permanent partial disability of Richards' body due to pain in the thoracolumbar spine. Dr. Stuckmeyer further opined that as a result of the injuries to Richards' right shoulder, both wrists and back, Richards had a permanent partial disability of thirty-five percent of his body, including the permanent partial disability to his back. Dr. Stuckmeyer also testified on redirect examination that a ten percent augmentation factor should apply.

Richards claimed he was entitled to compensation from the Second Injury Fund because his preexisting bilateral carpal tunnel condition combined with his subsequent shoulder injury to produce a total disability greater than the sum of the individual disabilities. However, on November 1, 2004, the ALJ concluded that Richards' preexisting carpal tunnel syndrome did not meet the threshold for Second Injury Fund liability and the Second Injury Fund was not liable for any deterioration of Richards' carpal tunnel syndrome subsequent to the shoulder injury.

Richards appealed the decision of the Division of Workers' Compensation to the Commission pursuant to section 287.480.[1] The Commission found that the ALJ correctly weighed and evaluated the medical and lay evidence in reaching her conclusions. The Commission adopted the findings of the ALJ as to the credibility, relia-bility, and probative worth of the medical and lay evidence.

The Commission agreed with the ALJ that the testimony of Richards and Dr. Stuckmeyer failed to establish the necessary criteria for compensation from the Second Injury Fund. The Commission also found that Dr. Stuckmeyer's ratings, when reduced to weeks of compensation as calculated by the ALJ, do not establish any impact from the combination of present disability added to preexisting disability, thus barring recovery from the Second Injury Fund under section 287.220. The Commission did not accept the testimony of Dr. Stuckmeyer as credible nor as dispositive of the questions of disability. Richards' carpal tunnel syndrome was not shown to be disabling by harming his earning ability. On March 22, 2005, the Commission held that the award of the ALJ was supported by competent and substantial evidence and made in accordance with the Missouri Workers' Compensation Act. The Commission affirmed the award and decision of the ALJ and awarded no compensation from the Second Injury Fund. This appeal follows.

### Standard of Review

 *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222–23 (Mo.banc 2003), provides:

A court must examine the whole record to determine if it contains sufficient competent and substantial evidence to support the award, i.e., whether the award is contrary to the overwhelming weight of the evidence. Whether the award is supported by competent and substantial evidence is judged by examining the evidence in the context of the whole record. An award that is contrary to the overwhelming weight of the

---

1. Statutory references are to the Revised Statutes of Missouri, 2000.

evidence is, in context, not supported by competent and substantial evidence. (Citation omitted.)

## Point I

In Point I, Richards argues that the Commission erred in denying Second Injury Fund liability, because Richards' prior injuries constituted a hindrance or obstacle to employment and reemployment, as required for compensation from the Second Injury Fund under section 287.220.1.

In support of Point I, Richards argues that his work routine was changed by his prior injury to his hands. Richards claims that he was initially given splints to wear, which interfered with his ability to perform simple tasks at work, and that Dr. Gunter seriously considered surgery. Richards also claims that his problems worsened and his hands became so painful that he eventually had to resort to surgery in October 2003, because he could not perform his job duties at Hayes Wheels and Stahl's Manufacturing. Richards further claims that his carpal tunnel syndrome was a hindrance or obstacle to his employment at the Sedalia Steel Company. Richards concludes that there is no substantial evidence from which the Commission could determine that Richards' preexisting carpal tunnel syndrome did not constitute a hindrance or obstacle to employment or reemployment.

Richards is correct that a threshold issue is whether or not his prior injury constituted a hindrance or obstacle to employment. However, there is an additional threshold issue that disqualifies Richards from compensation. Section 287.220.1 also provides that where the preexisting condition involves a "major extremity," such as a hand, there must be "a minimum of fifteen percent permanent partial disability."

In the instant case, Richards only saw Dr. Gunter twice for his carpal tunnel syndrome, and his only treatment was splints and anti-inflammatory medication. Richards was instructed to return to Dr. Gunter if the carpal tunnel syndrome persisted, but Richards never returned after his second appointment. Furthermore, Richards continued to perform repetitive tasks after his subsequent shoulder injury. The only evidence of Richards having a permanent partial disability due to carpal tunnel syndrome at the time of his shoulder injury is the testimony of Dr. Stuckmeyer, who did not examine Richards until *after* the subsequent shoulder injury. The ALJ and the Commission were free to disregard Dr. Stuckmeyer's opinion. In fact, the Commission explicitly "[did] not accept the testimony of Dr. Stuckmeyer as credible nor as dispositive of the questions of disability." Although Richards' shoulder injury may have caused an obstacle to reemployment, Richards did not meet the threshold of showing that he had at least fifteen percent permanent partial disability in his hands due to carpal tunnel syndrome at the time of his shoulder injury.

Richards argues in his reply brief that the Second Injury Fund has misconstrued the meaning of section 287.220.1 by arguing that Richards had the burden of proving the extent of his carpal tunnel condition at the time of the shoulder injury. Richards claims that section 287.220.1 only requires that the preexisting disability be a hindrance or obstacle to employment or reemployment and that a claimant is only required to show an actual or measurable disability at the time of the second injury. Richards' argument lacks merit because it contradicts the plain language of section 287.220.1, which provides, in relevant part, that Second Injury Fund liability is established:

If any employee who has a preexisting permanent partial disability whether from compensable injury or otherwise, of such seriousness as to constitute a **hindrance or obstacle** to employment or to obtaining reemployment if the employee becomes unemployed, ***and*** the preexisting permanent partial disability, if a body as a whole injury, equals a minimum of fifty weeks of compensation ***or,*** **if a major extremity injury only, equals a minimum of fifteen percent permanent partial disability[.]**

(Emphasis added.)

"The cardinal rule of statutory construction is that the intention of the legislature in enacting the statute must be determined and the statute as a whole should be looked to in construing any part of it." *J.S. v. Beaird,* 28 S.W.3d 875, 876 (Mo. banc 2000). "Words are to be given their plain and ordinary meaning wherever possible." *Id.* "Each word or phrase in a statute must be given meaning if possible." *State v. Blocker,* 133 S.W.3d 502, 504 (Mo. banc 2004).

■ The plain language of section 287.220.1 clearly indicates that in order to trigger Second Injury Fund Liability, there must be: (1) "a hindrance or obstacle to employment or to obtaining reemployment" and (2) a preexisting permanent partial disability that, "if a major extremity injury only, equals a minimum of fifteen percent permanent partial disability[.]" This completely contradicts Richards' argument that an employee only has the burden of proving that the preexisting disability is a hindrance or obstacle to employment or to obtaining reemployment. "The employer and insurer, and [c]laimant, are required to offer evidence to support a finding that apportions the percentage of

the work-related injury and the percentage of the [preexisting condition]." *Messex v. Sachs Elec. Co.,* 989 S.W.2d 206, 215 (Mo.App. E.D.1999).[2] "The extent or percentage of disability from the preexisting condition must be ascertained if Section 287.220.1 is to be given any meaning." *Id. Lammert v. Vess Beverages, Inc.,* 968 S.W.2d 720, 725 (Mo.App. E.D.1998),[3] provides that:

In order to compute the total disability compensation to which an employee is entitled from the Second Injury Fund, the Commission must determine not only that a preexisting permanent partial disability existed, but also the degree or percentage of the employee's disability that is attributable solely to the preexisting condition at the time of the last injury.

■ Although Dr. Stuckmeyer offered an opinion on the extent of Richards' disability associated with his wrists, Dr. Stuckmeyer's examination was performed some four years after the problems first developed. Dr. Stuckmeyer's opinion was as to the disability at the time he evaluated Richards in January 2003, not "at the time of the last injury." Additionally, Richards said his wrists became worse between the time of the injury and when he saw Dr. Stuckmeyer. "The Second Injury Fund is not responsible for progression of preexisting conditions[.]" *Lammert,* 968 S.W.2d at 725. There is simply no evidence establishing the extent of Richards' carpal tunnel condition "as of the time of the last injury" much less that the condition resulted in a fifteen percent permanent partial disability at the time of the second injury to his shoulder.

■ Richards also claims that because the Second Injury Fund offered no

---

**2.** Overruled in part, on other grounds, by *Hampton,* 121 S.W.3d at 223, app. at 226.

**3.** Overruled in part, on other grounds, by *Hampton,* 121 S.W.3d at 223, app. at 226.

impeaching evidence to the percentage of disability opined by Dr. Stuckmeyer, it is impossible to say that based on the entire record, Dr. Stuckmeyer's opinion is so incredible that the record clearly indicates the threshold was not met. "A determination of what weight [the Commission] will accord expert testimony on matters relating to medical causation lies within the Commission's sole discretion and cannot be reviewed by [an appellate] [c]ourt." *Aldridge v. S. Mo. Gas Co.,* 131 S.W.3d 876, 882 (Mo.App. S.D.2004). The commission may disregard witness testimony even where the testimony is not impeached or contradictory evidence is not introduced. *Tidwell v. Walker Constr.,* 151 S.W.3d 127, 133 (Mo.App. S.D.2004).

In the instant case, the Commission was free to disregard Richards' testimony that his preexisting carpal tunnel condition was a hindrance or obstacle to employment or reemployment and Dr. Stuckmeyer's opinion about Richards' disability, even though the testimony was not impeached or contradicted. The weight and credibility of witnesses was within the sole discretion of the Commission and cannot be reviewed on appeal.

Point I is denied.

## Point II

Because Point I is dispositive of this appeal we decline to review Point II.

## Conclusion

For the foregoing reasons, the decision of the Commission is affirmed.

SPINDEN, P.J., and HOLLIGER, J., concur.