**SNL SECURITIES, L.C., Appellant,**

v.

**NATIONAL ASSOCIATION OF INSURANCE COMMISSIONERS, et al., Respondents.**

**No. WD 57291.**

Missouri Court of Appeals, Western District.

May 31, 2000.

Motion for Transfer to Supreme Court Denied Aug. 1, 2000.

Application for Transfer Denied Aug. 29, 2000.

Robert B. Hoemeke, Leland H. Corley, Paul J. Schulte, St. Louis, for Appellant.

Jeffrey J. Simon, Michael C. Phillips, Kansas City, for Respondent.

Before: LAURA DENVIR STITH, P.J., and HOWARD and NEWTON, JJ.

VICTOR C. HOWARD, Judge

Appellant, SNL Securities, L.C. (SNL), sought to obtain electronically stored records from respondent, National Association of Insurance Commissioners, et al.

(NAIC [1]), pursuant to Missouri's Sunshine Law, Chapter 610 of the Revised Statutes of Missouri (Sunshine Law). The trial court held the NAIC was not required to comply with the records disclosure provisions of Chapter 610, because the NAIC was not a "quasi-public governmental body" under § 610.010(4)(f). As a result, the trial court granted summary judgment on behalf of the NAIC. SNL now appeals the summary judgment.

We affirm.

## Background

The issue before this court is whether the NAIC is required to provide records to SNL under Chapter 610 of Missouri's Revised Statutes (Sunshine Law). We begin with a brief background of the parties' dispute.

In October of 1996, SNL [2] sought to obtain from the NAIC raw, electronic-form [3] financial data that the NAIC had collected from insurance companies nationwide. The NAIC made these records available on a database to other vendors through license agreements, which included royalties to the NAIC. Although the NAIC initially discussed licensing or selling SNL the financial information in electronic form, negotiations failed, and the NAIC eventually refused to make such records available to SNL. After the failed negotiations, SNL, believing the NAIC to be a "quasi-public governmental body" under § 610.010.4 of the Sunshine Law, insisted the NAIC provide the records at cost, as dictated by § 610.022, rather than through licensing agreements.

On April 13, 1998, SNL filed a civil action against the NAIC demanding the court order the NAIC to produce the requested records. SNL moved for summary judgment. SNL alleged that the NAIC is a "quasi-public governmental body," § 610.010(4)(f), and that it was therefore required to publicly disclose the records, § 610.023.2. The NAIC filed a cross-motion for summary judgment on the grounds that the NAIC is not a "quasi-public governmental body" and is therefore not required to disclose the requested records.

On May 10, 1999, the trial court granted summary judgment to the NAIC. SNL now appeals that judgment.

## Standard of Review

We review *de novo* a trial court's granting of summary judgment. *Dunagan by Dunagan v. Shalom Geriatric Center,* 967 S.W.2d 285, 287 (Mo.App. W.D.1998). In doing so, we consider the record in the light most favorable to SNL and accord SNL all reasonable inferences that may be drawn from the record. *Id.* We consider summary judgment " 'an extreme and drastic remedy' " and are cautious in affirming it, "because the procedure implicates the denial of due process by denying an opposing party [its] day in court." *Horner v. Spalitto,* 1 S.W.3d 519, 522 (Mo. App. W.D.1999) (quoting *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 377 (Mo. banc 1993)). Nonetheless, summary judgment is appropriate if there are no genuine is-

---

1. SNL named the Director as a representative class member of the NAIC. Rule 52.10. The NAIC and its members will be collectively referred to as the NAIC in the remainder of this opinion.

2. SNL is a Virginia-based research and publishing company that focuses on banks, thrifts, REIT's, insurance companies and specialized financial services companies. Information concerning the NAIC is discussed *infra.*

3. SNL also requested the documents directly from the Missouri Department of Insurance (MDI). The MDI did not retain electronic copies of the records, but it did respond to SNL by making hard copies of the records available for inspection pursuant to the Sunshine Law. SNL apparently chose not to inspect or copy the hard copies of the records. Likewise, the NAIC offered to provide SNL with hard copies of all such statements, but SNL declined, instead insisting on electronic form.

sues of material fact, and the movant is entitled to judgment as a matter of law.[4] *Dunagan,* 967 S.W.2d at 287.

### "Quasi–Public Governmental Body"

At issue is whether the NAIC is subject to Missouri's "Sunshine Law" – Missouri's state open meetings and records law set forth in Chapter 610 of Missouri's Revised Statutes. The Sunshine Law governs *governmental bodies and records.* Section 610.010.4, defines "public governmental body" as, "any legislative, administrative or governmental entity created by the constitution or statutes of this state, by order or ordinance of any political subdivision or district, judicial entities when operating in an administrative capacity, or by executive order." Subsections (a) through (f) of § 610.010.4 itemize entities specifically included within this definition. SNL asserts that pursuant to § 610.010.4(f)(a), the NAIC is a "quasi-public governmental body." Section 610.010.4(f)(a) defines "quasi-public governmental body" as:

> [A]ny person, corporation or partnership organized or authorized to do business in this state pursuant to the provisions of chapter 352, 353, or 355, RSMo, or unincorporated association which either:
>
> a. Has as its primary purpose to enter into contracts with public governmental bodies, or to engage primarily in activities carried out pursuant to an agreement or agreements with public governmental bodies . . .

In order to determine whether the NAIC falls within this definition, a brief background of the organization is necessary. In 1871, the insurance commissioners of various states, not including Missouri, voluntarily agreed to the creation of the NAIC. Today, the NAIC is an unincorporated association with its main offices in Kansas City, Missouri. Currently, the chief insurance regulators of all fifty states, of the District of Columbia and of the four United States territories belong to the NAIC. Article II of the NAIC's constitution states:

> The mission of the NAIC is to assist State insurance regulators, individually and collectively, serving the public interest and achieving the following fundamental insurance regulatory goals in a responsive, efficient and cost-effective manner consistent with the wishes of its members:
>
> (1) Protect the public interest, promote competitive markets and facilitate the fair and equitable treatment of insurance consumers;
>
> (2) Promote the reliability, solvency and financial solidity of insurance institutions; and
>
> (3) Support and improve the State regulation of insurance.

In order to further its mission, the NAIC consists of member-staffed committees, sub-committees, task forces and working groups that study and discuss issues relating to insurance regulation. In effect, the NAIC serves as a "think tank" for insurance commissioners throughout the nation. The NAIC is funded primarily by fees from the insurance industry, from the royalties and sale of its publication and databases to non-members, and from seminar and meeting attendance fees of non-members. Less than five percent of its funding is from assessments paid by its members, such as the Director of the Missouri Department of Insurance (Director).

The Director is not required to be a member of the NAIC but does so voluntarily. He may withdraw from membership at his discretion. The annual membership assessment and education fees paid by Missouri represent less than one-tenth of one percent of the NAIC's annual revenue.

Some of the NAIC's functions and services to its members include: the drafting

---

**4.** Neither party disputes that summary judgment is an appropriate means for deciding this issue.

of model insurance statutes and regulations which are made available to the NAIC members for their consideration and possible implementation;[5] payment of travel expenses to certain conferences and training programs; research and data support; accreditation review support; reinsurance and accounting support; access to securities information; and complimentary NAIC publications.

With this in mind, we now consider whether the NAIC is a "quasi-public governmental body" and would therefore be subject to the Sunshine Law, § 610.010.4(f). In doing so, we must keep in mind that "[i]t is the public policy of [Missouri] that ... records ... of public governmental bodies be open to the public unless otherwise provided by law. Sections 610.010 to 610.028 shall be liberally construed and their exceptions strictly construed to promote this public policy." § 610.011. We will determine the legislature's intent as it relates to defining "public governmental body" by first considering the plain and ordinary meaning of the terms of the statute. *Spradlin v. City of Fulton*, 982 S.W.2d 255, 259 (Mo. banc 1998). It is undisputed that the NAIC is appropriately considered an "unincorporated association"—defined by BLACK'S LAW DICTIONARY, 6th ED., as a "[v]oluntary group of persons, without a charter, formed by mutual consent for [the] purpose of promoting common enterprise or prosecuting common objective." We next consider whether: (1) the NAIC "[h]as as its primary purpose to enter into contracts with public governmental bodies, or to engage primarily in activities carried out pursuant to an agreement or agreements with public governmental bodies." § 610.010.4(f).(a).

As this subsection discusses interaction with "public governmental bodies," we must first define that term. In general,

§ 610.010.4 defines "public governmental body" as "any legislative, administrative or governmental entity created by the constitutions or statutes *of this state*,[6] by order or ordinance of any political subdivision or district, judicial entities when operating in an administrative capacity, or by executive order." (Emphasis added.) The statute then itemizes specific "bodies" included in the definition, with subsection (f) being the focus of the issue now before us. Section 610.010.4(f)(a) is written in terms of whether the NAIC "has as its primary purpose to enter into contracts" or "to engage *primarily*" in relations with Missouri public governmental bodies. (Emphasis added.) BLACK'S LAW DICTIONARY, 6th ED., defines "primary purpose" as "[t]hat which is first in intention; which is fundamental. The principal or fixed intention with which an act or course of conduct is undertaken." *See, e.g., Bunting v. Koehr*, 865 S.W.2d 351, 354 (Mo. banc 1993) (holding "primarily" means "principally"); *Friedman Textile Co. v. Northland Shopping Center, Inc.*, 321 S.W.2d 9, 15–16 (Mo.App.1959); and *National City Lines, Inc. v. LLC Corp.*, 687 F.2d 1122 (8th Cir.1982) (holding LLC not "primarily engaged" in business of insurance for purposes of Missouri Insurance Holding Companies Act when only ten percent of its revenues and nine percent of its assets were derived from its domestic insurance subsidiary). Given the nature of the NAIC's voluntary membership, its nationwide constituency and the general nationwide "think tank" functions of the NAIC, we do not believe the NAIC's primary or principal purpose is to enter into contracts with or to engage primarily in activities carried out pursuant to an agreement or agreements with Missouri public governmental bodies. § 610.010.4(f)(a).

The NAIC also lacks the governmental power required for it to be considered a

---

**5.** In this regard, the NAIC functions similarly to the American Law Institute (ALI) in drafting model codes to be adopted by or altered by state legislatures as they deem appropriate. The NAIC does not itself pass laws or regulations nor does it require its members to do so.

**6.** The 8th Circuit determined "the statute is aimed at state-created bodies." *In re Kansas City Star Co.*, 73 F.3d 191, 194 (8th Cir.1996).

"quasi-public governmental body." *Champ v. Poelker*, 755 S.W.2d 383 (Mo. App. E.D.1988), considered whether or not certain entities are subject to the Sunshine Law. The *Champ* court found that although the Industrial Development Authority of the City of St. Louis (IDA) was a private organization organized under Missouri statutes with the purpose of benefiting the public, it was a distinct legal entity, not a political subdivision of the city. *Id.* at 390. The IDA had no authority to tax, formulate policy, or promulgate rules which would directly affect citizens of St. Louis. *Id.* Specifically, the court held IDA was not a "quasi-public governmental body" because:

> By its very nature, the quintessence of a 'public governmental body' is the power to govern by the formulation of policies and the promulgation of statutes, ordinances, rules and regulations, or the exercise of quasi-judicial power. It defies semantics to believe that the legislature intended inclusion of bodies or entities barren of the power to govern in the definition of "public governmental body." If such were intended, a simple stroke of the pen striking the adjective "governmental" would have made it a fait accompli.

*Id.* at 390–91.[7]

The NAIC likewise lacks governmental power. It cannot tax, promulgate statutes or regulations or directly affect the citizens of Missouri. As aforementioned, the NAIC does aid in the drafting of model insurance legislation and regulatory schemes. However, simply drafting and suggesting does not amount to governmental power. The "models" cannot become law until the State of Missouri, through its legislature and the Missouri Department of Insurance pass and enforce them. The records sought by SNL were forwarded by insurance companies to the NAIC only as a result of each of the individual member's state legislatures passing laws requiring the submittal. *See* § 375.041.

## Conclusion

We have determined the NAIC is not a "quasi-public governmental body" under § 610.010.4(f), because its primary or principal purpose is not to enter into contracts with or engage primarily in activities carried out pursuant to an agreement or agreements with Missouri public governmental bodies. The NAIC also lacks governmental power. Thus, the NAIC does not fall within the Missouri Sunshine Law. It is not required by law to disclose its records to the public or SNL. For these reasons, the trial court's judgment is affirmed.

LAURA DENVIR STITH, P.J., and NEWTON, J., concur.

---

7. Appellant relies on another portion of the *Champ* opinion in which the court determined the Convention and Visitors Bureau of Greater St. Louis was a "quasi-public governmental body." However, we agree with the trial court that this portion of the *Champ* opinion and *North Kansas City Hosp. Bd. of Trustees v. St. Luke's Northland Hosp.*, 984 S.W.2d 113 (Mo.App. W.D.1998), are not persuasive as both cases involve entities which functioned, contracted, and existed solely within the State of Missouri. The NAIC does not fit into this category of entities.